IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02196-KAS

M.A.M.[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Social Security Administrative Record** [#9], filed October 26, 2023, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner") denying Plaintiff's claim for supplemental security income pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq.[2] Plaintiff filed an Opening Brief [#11] (the "Brief") and Defendant filed a Response [#12] in opposition. No Reply was filed. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] On November 12, 2019, Plaintiff also filed a claim for disability insurance benefits pursuant to Title II of the Act. Tr. 84. The ALJ denied this claim at step two of the five-step disability determination analysis. Tr. 87. Plaintiff does not assert that the ALJ erred at this step, but rather only provides argument as to error at step four. *See generally Brief* [#11]. Thus, because, Plaintiff makes no argument with respect to her Title II claim, the Court only addresses Plaintiff's Title XVI claim in this Order. *See also Response* [#12] at 2 ("This case appears to only involve the [Supplemental Security Income] claim.").

and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[3]

## I. Background

On November 12, 2019, Plaintiff filed an application for supplemental security income under Title XVI, alleging disability beginning February 28, 2007. Tr. 84.[4] Her claim was initially denied on July 20, 2021, and again on reconsideration on December 2, 2021. *Id.* On February 20, 2023, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 98.

The ALJ first determined that Plaintiff has not engaged in substantial gainful activity ("SGA") since February 28, 2007, the alleged onset date. Tr. 86. The ALJ next found that since November 12, 2019, the Supplemental Security Income filing date, Plaintiff has suffered from twelve severe impairments: (1) degenerative disc disease of the cervical spine; (2) degenerative disc disease and pars defect of the lumbar spine; (3) left shoulder tendonitis; (4) mild bilateral hip osteoarthrosis; (5) bilateral Achilles tendonitis; (6) bunions of the bilateral feet; (7) costochondritis/chest pain/bradycardia; (8) tension headaches; (9) chronic pain syndrome; (10) benign essential tremor; (11) depressive disorder; and (12) posttraumatic stress disorder. *Id.* However, the ALJ further found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416.926)." Tr. 88.

---

[3] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#10]; *Reassignment* [#13]; *Order of Reference* [#14].

[4] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9-1 through 9-13, by the sequential transcript numbers instead of the separate docket numbers.

The ALJ next concluded that, since November 12, 2019, Plaintiff has had the residual functional capacity ("RFC") to perform work-related activities with the following restrictions:

> [S]he can lift and carry up to 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for about six hours and sit for about six hours in an eight-hour workday with normal breaks; she can push or pull frequently with the left upper extremity; she can never climb ladders, ropes, or scaffolds and never crawl; she can occasionally climb ramps or stairs, balance, stoop, kneel, and crouch; she can frequently perform overhead reaching bilaterally; she is limited to understanding, remembering, and carrying out simple instructions that can be learned in up to and including 30 days of on-the-job training; she can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work; she can have occasional interaction with the public, coworkers, and supervisors; and can adapt to occasional changes in the workplace.

Tr. 90. The ALJ found that Plaintiff "has no past relevant work (20 C.F.R. 416.965)." Tr. 96. The ALJ further found that Plaintiff was a "younger individual between the ages of 18 and 49" on the alleged disability onset date but that Plaintiff subsequently changed categories to "closely approaching advanced age" upon reaching 50 years of age. Tr. 96-97; 20 C.F.R. § 416.963. The ALJ noted that Plaintiff has "at least a high school education." Tr. 97. Next, the ALJ noted that transferability of job skills was not an issue because Plaintiff "does not have past relevant work (20 C.F.R. 416.968)." *Id.* Finally, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC during the period since November 12, 2019, there were a significant number of jobs in the national economy which Plaintiff could have performed, including the representative occupations of "Housekeeping cleaner," with 660,500 jobs nationally; "Small products assembler I," with 64,000 jobs nationally; and "Production assembler," with 55,000 jobs nationally. *Id.* The ALJ therefore found that Plaintiff was not disabled at step five. Tr. 98.

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 416.1481. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any

substantial gainful activity for at least twelve consecutive months. *See*, *e.g.*, *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

## A.   The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The

Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 416.945(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Rather, "we review the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g) and *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation and quotation marks omitted).

### III. Analysis

Plaintiff argues that the ALJ erred by (1) failing to properly assess the medical opinions of Nurse Practitioners James Kuster ("Kuster"), Marcia Moore ("Moore"), and Kim Williams ("Williams"); (2) failing to incorporate the "persuasive" conclusions of Dr.

Word-Allen and Dr. Schwartz; (3) picking and choosing the records which supported her desired conclusion; and (4) failing to properly evaluate Plaintiff's subjective symptom testimony. *Brief* [#11] at 11-21.[5]

**A.     Nurse Practitioners Kuster's, Moore's, and Williams' Opinions**

Plaintiff first argues that the ALJ incorrectly concluded that the opinions of Mr. Kuster, Ms. Moore, and Ms. Williams were unpersuasive. *Id*. at 12-13, 15. Plaintiff further argues that the ALJ erred by determining that these opinions were inconsistent and unsupported, as that determination is purportedly contrary to the evidence in the record. *Id.* The Court disagrees for the reasons stated below.

The ALJ must "articulate how [she] considered the medical opinions" presented in the claim. 20 C.F.R. § 416.920c(a). Pursuant to 20 C.F.R. § 416.920c(b)(2), supportability and consistency are the two most important factors for the ALJ to consider when determining the persuasiveness of medical opinions and prior administrative medical findings. "Regardless of any other factors considered, the ALJ <u>must</u> explain how he considered the two 'most important factors'—supportability and consistency." *Crystal R.E. v. Kijakazi*, Case No. 20-cv-00319-SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)) (emphasis in original)); *see also* 20 C.F.R. § 416.920c(b)(2) (stating that the agency "*will* explain how [it] considered the supportability and consistency factors for a medical source's medical opinions") (emphasis added). The ALJ may, but is not required to, explain how she considered factors such as the medical source's relationship with the claimant and the source's specialization. 20 C.F.R. § 416.920c(b)(2), (c)(3)-(4).

---

[5] Citations to a brief's page numbers refer to the numbering used by the CM/ECF docketing system, rather than the document's pages as numbered by the parties.

Plaintiff does not argue that the ALJ failed to discuss the consistency or supportability of the medical opinions. Instead, Plaintiff argues that the ALJ's conclusions regarding consistency and supportability were incorrect. *Brief* [#11] at 13-14, 16.

Plaintiff specifically argues that the ALJ's conclusion that the opinions of Mr. Kuster and Ms. Moore were unpersuasive "was contrary to the evidence in the record and Plaintiff's testimony at the hearing which supported these opinions . . . [and that] [t]hese opinions were consistent with and supported by the medical evidence." *Id.* at 13-14. Plaintiff details treatment records which she argues "refute the ALJ's conclusions which were in error and not supported by substantial evidence[.]" *Id.* at 15. Plaintiff further argues that the ALJ's conclusion that Ms. Williams' opinion was "markedly inconsistent with the medical evidence . . . [is] incorrect and [is] contrary to the evidence in the record." *Id.* at 16. Plaintiff argues that Ms. Williams' opinion was consistent with Plaintiff's testimony at the hearing and consistent and supported by the medical evidence. *Id.* at 16-18. At the conclusion of Plaintiff's argument on this issue, she asserts that the opinions of Mr. Kuster, Ms. Moore, and Ms. Williams "were supported by and consistent with the additional medical evidence in this matter and the ALJ's interpretation and analysis of these opinions was in error." *Id.* at 20.

The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias*, 933 F.2d at 800. In other words, the Court does not reexamine the issues de novo. *Sisco*, 10 F.3d at 741. Here, Ms. Williams opined that Plaintiff "is limited to substantially less than the full range of sedentary work activities, must be able to shift positions at will, would need to take unscheduled breaks as needed, would be off task for 25 percent or more of the workday, is incapable of even 'low stress' work, and

9

would be absent from work more than four days per month." Tr. 95. Mr. Kuster opined that Plaintiff "is unable to meet competitive standards or has no useful ability to function with respect to almost all basic mental work-related activities and would be absent from work on many days per week." Tr. 96. Ms. Moore opined that Plaintiff "is seriously limited or has no useful ability to function with respect to most basic mental work-related activities and would be off task at all times during the workweek." Tr. 96.

In finding Ms. Williams' opinion unpersuasive, the ALJ noted that "it is markedly inconsistent with the medical evidence documenting indications of the claimant's positive response to treatment with medications, injections, and physical therapy, her descriptions of providing substantial care for her husband, and physical exams typically showing normal strength, sensation, coordination, balance, and gait." Tr. 95. Likewise, in finding the opinions of Mr. Kuster and Ms. Moore to be unpersuasive, the ALJ found that they were "markedly inconsistent with the medical evidence documenting the claimant's positive response to psychiatric medications, her reports of caring for her husband, and largely normal mental status exams." Tr. 96.

By asking the Court to decide that the ALJ should have found the opinions of the medical sources to be persuasive, Plaintiff is impermissibly asking the Court to reweigh the evidence and displace the ALJ's judgment. The ALJ explained her reasoning by pointing to substantial evidence in support of her findings, which was summarized in her analysis of the nurse practitioners' opinions and thoroughly discussed in her decision. *See, e.g.*, Tr. 91-95. The Court may not reweigh that evidence despite the presence of some evidence which could support a contrary finding. *See Lax*, 489 F.3d at 1084; *Deherrera v. Comm'r, SSA*, 848 F. App'x 806, 810 (10th Cir. 2021) ("But while these

arguments may show the ALJ could have interpreted the evidence to support a different outcome, they, at most, amount to invitations to reweigh the evidence, which we cannot do.").

Accordingly, the Court finds no error in the ALJ's conclusions about opinions of Ms. Williams, Mr. Kuster, and Ms. Moore.

**B.     Dr. Word-Allen and Dr. Schwartz's Opinions**

Plaintiff next argues that the ALJ erred by failing to incorporate into the RFC the "persuasive" limitations of Dr. Word-Allen and Dr. Schwartz, the two state agency psychological consultants. *Brief* [#11] at 15-16. The Court disagrees for the reasons stated below.

A medical source's statement detailing an individual's abilities is evidence that an ALJ must consider along with all other relevant evidence when assessing an individual's RFC. *See* 20 C.F.R. § 416.945(a)(3). However, the ALJ ultimately makes the RFC determination, not a physician. *See* 20 C.F.R. § 416.920c(a) (stating that the ALJ does not give controlling weight or defer to any medical opinions or prior administrative medical findings). Therefore, the ALJ was not required to incorporate the limitations from Dr. Word-Allen and Dr. Schwartz's opinions into the RFC.

However—contrary to Plaintiff's assertion, and as Defendant points out—the ALJ *did* incorporate the conclusions of Dr. Word-Allen and Dr. Schwartz into the RFC. *Response* [#12] at 15-16; Tr. 90, 96.  In her conclusion, the ALJ stated that the RFC "is also somewhat supported by the prior administrative medical findings of the two state agency psychological consultants, Drs. Word-Allen and Schwartz." Tr. 96. The ALJ accounted for their opinion that Plaintiff could not "work closely with supervisors or

11

coworkers, but can accept supervision and relate to coworkers if the contact is not frequent or prolonged, [and Plaintiff] must have limited interaction with the public[.]" Tr. 96. She did so by limiting Plaintiff to only occasional interaction with the public, coworkers, and supervisors. *Id*. Additionally, where the ALJ's limitations differed from Drs. Ward-Allen's and Schwartz's opinions, it was because the ALJ further limited Plaintiff. Tr. 90, 96. For example, the ALJ limited Plaintiff to only occasional changes in the workplace, while they opined that Plaintiff could tolerate routine changes. *Id.* Therefore, the Court rejects Plaintiff's argument and finds no error.

**C.    Picking and Choosing Records**

Plaintiff next argues that the ALJ improperly cherry-picked the records that supported her conclusion and failed to discuss the evidence showing that Plaintiff still had fatigue and pain and that there were days where she could not care for her husband. *Brief* [#11] at 19. The Court disagrees for the reasons stated below.

Plaintiff correctly states that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)). However, so long as the record demonstrates that the ALJ considered all the evidence, the ALJ is not required to discuss every piece of evidence. *See Clifton*, 79 F.3d at 1009-10. Here, the ALJ repeatedly acknowledged both positive and negative developments in Plaintiff's condition and discussed and referenced many of the same medical records cited in Plaintiff's brief.

First, the ALJ discussed improvements and setbacks in Plaintiff's pain, fatigue, and other symptoms. As examples, the ALJ discussed the following:

- In late 2019, Plaintiff reported chronic fatigue;

- In late 2019, Plaintiff was in physical therapy for hip pain and reported diffuse body aches and joint pain at an emergency department follow up visit;

- In mid-2020, Plaintiff experienced intermittently severe lower back pain with spasms radiating to her groin;

- Throughout 2021, Plaintiff had variable complaints of pain in her neck, lower back, left shoulder, and Achilles tendons;

- Throughout 2021, Plaintiff had variable complaints of increased fatigue and pain in her neck, lower back, and left shoulder;

- In March 2021, physical therapy had "significant[ly]" improved Plaintiff's pain;

- Injections improved Plaintiff's lower back pain during the summer of 2021;

- In April 2022, Plaintiff reported having stuttering and word-finding difficulties associated with fatigue;

- In early 2022, Plaintiff complained of a flare of neck pain but stated that her left shoulder was improving;

- By June 2022, Plaintiff's pain was a little better overall;

- In the second half of 2022, Plaintiff obtained significant relief from her neck pain; and

- In January 2023, Plaintiff was reportedly doing well other than an acute viral illness.

Tr. 92-95 (citations omitted) (citations omitted).

Second, the ALJ cited many of the same medical records as those cited in Plaintiff's brief. For example, the ALJ and Plaintiff both discussed Plaintiff presenting to the emergency room with chest pain in late 2019. *Compare Brief* [#11] at 17 (citing Tr. 616-16 (Ex. 1F/4-5)) *with* Tr. 92 (citing Ex. 1F/3-5). They both also discussed Plaintiff's ten-day hospitalization for anxiety and depression in September 2019. *Compare Brief* [#11] at 14 (citing Tr. 796, 800 (Ex. 6F/19, 23)) *with* Tr. 92 (citing Ex. 6F/19, 22-23). And they discussed Plaintiff's April 2022 appointment regarding her intermittent tension headaches and word-finding difficulties associated with fatigue. *Compare Brief* [#11] at 18 (citing Tr. 1580 (Ex. 31F/73)) *with* Tr. 94 (citing Ex. 31F/73-74). As detailed by Defendant, the ALJ discussed several other medical records which Plaintiff cites in her brief. *See Response* [#12] at 18-19. Thus, the Court rejects Plaintiff's contention that the ALJ ignored or cherry-picked evidence. The ALJ clearly considered evidence that supported her conclusion *and* that undermined it. Accordingly, the Court finds no error.

### D.     Self-Described Symptoms and Limitations

Lastly, Plaintiff argues that the ALJ erred by failing to explain which of Plaintiff's complained-of symptoms she found consistent or inconsistent with the record and how her evaluation of Plaintiff's symptoms supported her conclusion. *Brief* [#11] at 22.

After using all the evidence in an individual's record to evaluate an individual's symptoms, the ALJ must explain which symptoms she found consistent or inconsistent with the record and how the evaluation of the symptoms led to the ALJ's conclusions. SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017). A single conclusory statement is not sufficient; instead, the ALJ must give "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly

14

articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. An individual's statements regarding the intensity, persistence, and limiting effects of symptoms will be evaluated in relation to objective medical evidence and other evidence for inconsistencies. 20 C.F.R. § 416.929(c)(4).

When evaluating a claimant's evidence of pain, the following factors must be considered: (1) whether the claimant "established a pain-producing impairment by objective medical evidence"; (2) if so, whether a "loose nexus" exists "between the proven impairment and the [c]laimant's subjective allegations of pain"; and (3) if so, whether, considering all the objective and subjective evidence, "[the] [c]laimant's pain is in fact disabling." *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004)).

If inconsistencies exist between the claimant's "statements about the intensity, persistence, and limiting effects of symptoms" and the objective medical and other evidence, the ALJ will determine that the claimant's "symptoms are less likely to reduce . . . her capacities to perform work related activities[.]" SSR 16-3p, 2017 WL 5180304, at *8.

An ALJ may consider several factors when evaluating a claimant's subjective complaints of pain, including:

(i) [Her] daily activities;
(ii) The location, duration, frequency, and intensity of [her] pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate [her] pain or other symptoms;
(v) Treatment, other than medication, . . . received for relief of [her] pain or other symptoms;
(vi) Any measures . . . used to relieve [her] pain or other symptoms . . .; and

15

> (vii) Other factors concerning [her] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). The ALJ need only discuss the factors relevant to the record evidence. *See* SSR 16-3p, 2017 WL 5180304 at *8. Further, an ALJ need not engage in a "formalistic factor-by-factor recitation of the evidence" while evaluating a claimant's subjective symptoms and their effects. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

Here, the ALJ summarized Plaintiff's self-described limitations and symptoms as follows:

> [Plaintiff] reports being able to sit for only short periods; having difficulty lifting even 10 pounds, standing for prolonged periods, walking, performing postural activities, reaching, using her hands, understanding and following instructions, making decisions, completing tasks, communicating, and getting along with others; having fatigue and sensitivity to sound and light; feeling paranoid and being hypervigilant; having poor sleep; being unable to concentrate; needing reminders to brush her teeth, though not to take her medication; experiencing periods when she is unable to get out of bed or leave her home; avoiding her neighbors and other people; and needing to nap for 30 minutes to two hours after engaging in any significant physical activity.

Tr. 91. Additionally, the ALJ noted other statements that Plaintiff made regarding her abilities, which are inconsistent with her self-described symptoms and limitations. Tr. 91-92.

The ALJ then found that, although Plaintiff's medically determinable impairments could be reasonably expected to cause some of the alleged symptoms, her "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 92. The ALJ then extensively discussed the medical evidence, medical opinions, and prior administrative medical findings. Tr. 92-96. She ultimately found that "[t]he above-stated

16

finding of residual functional capacity . . . is consistent with and supported by the objective medical signs and findings, the reports and observations documented in the medical treatment records, and the prior administrative findings of . . . Drs. Phelps, M.D. and Karande." Tr. 96.

After careful evaluation of Plaintiff's argument that the ALJ failed to account for Plaintiff's symptoms, the Court ultimately agrees with Defendant that the ALJ accounted for Plaintiff's pain and the ALJ's decision is supported by substantial evidence. *See Lax*, 489 F.3d at 1084.

First, the ALJ described how Plaintiff's reports of her daily activities were inconsistent with her statements about the intensity, persistence, and limiting effects of her symptoms. Tr. 92. The ALJ properly considered this evidence, as daily activities are a factor that the ALJ may consider in evaluating a claimant's subjective descriptions of her pain. 20 C.F.R. § 416.929(c)(3)(i). Plaintiff reported being able to care for her husband, walk her dogs, prepare simple meals, do basic cleaning and laundry, walk and drive to get around, shop, pay bills, read, paint, talk on the phone with friends, and sometimes talk to neighbors. Tr. 92. These reports, as the ALJ explained, are inconsistent with Plaintiff's descriptions of the severity of her symptoms and limitations. *Id.*

Second, the ALJ explained why she found Plaintiff's self-reported limitations to be inconsistent with the medical evidence. Tr. 92-95; *see* 20 C.F.R. § 416.929(c)(4) (stating that conflicts between a claimant's statements and other evidence must be considered by the ALJ). The ALJ correctly considered this evidence, because the ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence." *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Further, the effects of

medications and other treatments in relieving pain are relevant factors in evaluating a claimant's descriptions of her pain. 20 C.F.R. § 416.929(c)(3)(iv)-(v). As described by the ALJ, the medical evidence documents Plaintiff's positive response to medications, injections, and physical therapy; considerably intact physical exams; and largely normal mental status exams. Tr. 95. This evidence conflicts with and does not support Plaintiff's claims of greater intensity, persistence, and limiting effects of her symptoms.

Third, the ALJ noted that Plaintiff's reported job loss due to her caring for her ailing husband directly conflicted with any claim of disability from all work due to her impairments and, thus, diminished the persuasiveness of her claims. Tr. 92. The ALJ properly considered this evidence about Plaintiff's prior work record. *See* 20 C.F.R. § 416.929(c)(3). Thus, the Court finds that the ALJ's findings are supported by substantial evidence, and the Court finds no error.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the decision of the Commissioner in this case is **AFFIRMED.**

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in favor of Defendant and close this case.

Dated: September 19, 2024                              BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge